## STATE v. DANIEL BITTERMAN.

232 N. W. 2d 91.

July 11, 1975—No. 44868.

*Dudley, Smith & Belisle, Wayne T. Belisle,* and *Thomas Mooney,* for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Rogosheske, Peterson, Scott, and Chanak, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from a judgment of conviction in Ramsey County District Court for the possession of heroin. The heroin was found during a search of the defendant by a police officer in a St. Paul apartment. The defendant sought to have the evidence suppressed in a Rasmussen hearing upon the ground that it was the product of an illegal search and seizure. The court denied the motion, and the case was tried on stipulated facts after the defendant waived a jury trial. The court found the defendant guilty as charged. We affirm this conviction.

On September 27, 1973, police officer Richard Freichels, who had five years' experience in narcotics enforcement, including two years as an undercover agent in the narcotics division of the St. Paul Police Department and three years under assignment from that department to the Metropolitan Area Narcotics Squad, and other officers entered the lower duplex apartment at 1154 Norton Street, St. Paul, pursuant to a valid search warrant, for the stated purpose of conducting a search of the premises occupied by Fred Quast and an unidentified female. The affidavit in support of the search warrant recited information from a reliable informant who had recently seen bindles of what appeared to be heroin within the premises, had seen resident Fred Quast inject himself with the contents of a bindle, and had observed sales of bindles on those premises. Further, independent

surveillance by Officer Freichels verified the occupancy of the premises by the persons described in the warrant, as well as other information as to their "comings and goings."

The officers arrived at approximately 1 p. m. and were admitted to the premises by two persons, Glenn Ray Louis and Wendy Muessel or Mussell who was later determined to be the unidentified female described in the search warrant. A succession of individuals began to arrive during the search of the premises. The first of these, Michael Kieffer, was searched, had heroin in his possession, and was arrested. Fred Quast, named in the warrant, appeared and was arrested for possession of heroin. Three other persons arrived at this lower duplex, one of whom was arrested for possession of marijuana.

At approximately 2 p. m. defendant arrived with Michael Loughrey. Officer Freichels testified that upon defendant's arrival at the lower duplex he recognized defendant as someone who had been pointed out to him as a heavy user of heroin and that he had additional information from police officers that Loughrey was a known heroin user. Freichels further stated that, based upon his involvement in approximately 3,000 arrests for narcotics violations, he knew it was common for narcotics users to carry weapons. He therefore pointed his gun at both defendant and Loughrey, told them that he was a police officer, and ordered them to place their hands against the wall.

He then conducted a pat-down for weapons on the basis of personal safety. As he ran his hands down the defendant's coat, he felt a round, hard object in the left coat pocket. It appears from his testimony that the seizure of this object was simultaneous with his realization that something was there; he stated, "I ran my hand down and hit the object; I put my hand in the pocket and took it out." When questioned, "At the time you took it out you didn't have any idea what it was?" he replied, "No, I didn't." The object was a 2-inch by 1-inch brown transparent prescription bottle. He proceeded to open the bottle and then one of the bindles it contained. Realizing that the bindles usually contained

a narcotic, the officer arrested the defendant and gave him a Miranda warning. A chemical analysis revealed that the substance was heroin.

The issue is a simple one: Was this search of the defendant and the seizure of the heroin a violation of the defendant's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution?

The defendant, upon appeal, initially contends that the conduct of the police officer in ordering him into the apartment at gunpoint prior to the discovery of the narcotics was an illegal arrest. He claims that a mere knocking upon a door of premises which happened to be the subject of a lawful search under a lawful warrant does not constitute sufficient suspicious conduct to amount to probable cause for this detention. He then asserts that if this detaining conduct was not an arrest, the ensuing stop and frisk was illegal as not warranted under the personal-safety-of-the-officers theory. He finally asserts that if the detention and subsequent stop and frisk were valid, the scope of the search was exceeded once it was determined that the small hard object in defendant's pocket was not a weapon. In response, the state, citing Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. ed. 2d 889 (1968), and Adams v. Williams, 407 U. S. 143, 92 S. Ct. 1921, 32 L. ed. 2d 612 (1972), contends that the stop and frisk was a reasonable response to the articulable suspicions of the officers under the circumstances, and that pursuant to their duty to investigate, they may take reasonable steps to make self-protective weapons searches.

The facts themselves are dispositive of the two preliminary contentions of the defendant. Although we would ordinarily agree that the mere knocking on a door of premises which are being lawfully searched does not make one subject to a search, in the instant case Officer Freichels, upon opening the door, was able to recognize the defendant as a heavy user of heroin, since a reliable informant had previously personally pointed out the defendant to Freichels. Further, the man accompanying defend-

ant was, based upon police information made available to Freichels, a user of heroin. In addition, two other individuals who had arrived on the premises prior to the defendant's arrival, had been arrested for possession of a controlled substance, heroin (Keiffer) and marijuana (Murray) respectively, and, merely one half hour before defendant's arrival, Fred Quast had been arrested for possession of heroin on his person. The fact that the premises were being searched under a warrant for heroin, a very dangerous drug, gave Officer Freichels the knowledge that dangerous people, who commonly carried weapons, were involved. These facts, coupled with his further knowledge of the traffic to and from the premises which he had personally observed, the information that Fred Quast had been recently seen to inject himself with the contents of a bindle, and that sales of bindles similar to those proved to contain heroin had been observed on those very premises, most certainly dispose of any credible objection to Officer Freichels at least having the right to make a weapons search for protective purposes. This, as Officer Freichels knew from his experience, was a volatile situation. Terry v. Ohio, *supra*; Sibron v. New York, 392 U. S. 40, 88 S. Ct. 1889, 20 L. ed. 2d 917 (1968); State v. Gannaway, 291 Minn. 391, 191 N. W. 2d 555 (1971); and Adams v. Williams, *supra*, in which the court stated, in expanding the Terry doctrine:

"The Court recognized in Terry that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. * * * The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.

\* \* \* \* \*

"In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person." 407 U. S. 146, 92 S. Ct. 1923, 32 L. ed. 2d 617.

The defendant finally contends that the scope of the search was exceeded once it was determined that the small hard object in defendant's pocket was not a weapon. We said, in State v. Gannaway, *supra*, that where a frisk is appropriate, the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing, justifies the removal of that object. In that case, a frisk and removal of what later turned out to be a smoking pipe was held proper. Here, the basis of articulable suspicion which bordered on probable cause to arrest prior to the frisk and the feeling of this hard object during that frisk, when coupled with all the surrounding facts, would certainly justify Officer Freichels' simultaneous reaching into the pocket, as well as the contemporaneous arrest. Since weapons are not always of an easily discernible shape, a mockery would be made of the right to frisk if the officers were required to positively ascertain that a felt object was a weapon prior to removing it. State v. Gannaway, *supra*.

It is not important as to when the magic words of arrest were uttered to an already-detained suspect. Under all the circumstances creating this delicate and precarious situation and in view of Officer Freichels' extensive experience, it might very well be concluded that there was probable cause for arrest at the moment his hand struck this object. He was familiar with methods of carrying narcotics and, considering all the facts and circumstances, he would seem to have the right to make the arrest before removing this object. Then the search would be constitutionally valid incident to the right of lawful arrest for probable cause. Under either theory, whether it be the spontaneous reaction in a weapons search or the final movement of a

search with probable cause, Officer Freichels was justified constitutionally in removing this hard object that proved to be a container of heroin.

Affirmed.