STATE of Minnesota, Respondent,

v.

Dennis HINKEL, Appellant.

No. CX–83–2059.

Court of Appeals of Minnesota.

July 31, 1984.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

C. Paul Jones, Minn. Public Defender, Renee J. Bergeron, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN, and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

In this appeal, we must determine whether a search warrant permitting police to search the premises of a building and all persons on the premises, authorized in connection with an investigation aimed at an "after hours joint", permitted a search of appellant Dennis Hinkel, who was found on the premises. We must further determine whether the search of appellant was justified as a precautionary weapons search. We reverse.

## FACTS

On May 27, 1983, a warrant was issued authorizing a day or night unannounced search of the premises at "162 N. Kent Street, St. Paul, Minnesota, and all persons on the premises." The warrant authorized the search for intoxicating liquor, wine, non-intoxicating malt beverages, paraphernalia for the dispensing of same, and all other equipment associated with the sale, storage and/or consumption of liquor, gambling devices, weapons, guns, controlled substances and paraphernalia used for its distribution, and all other contraband.

The police executed this warrant at 1:00 a.m. on May 28. They immediately viewed substantial numbers of half pint bottles of liquor, cans of beer, weapons, controlled substances, and gambling devices. The officers lined up everyone in the house, including Hinkel. In searching Hinkel, the officer did a "pat down" and ran his thumbs along the waistband of Hinkel's pants. He felt an object and, suspecting it was contraband, pulled out five packets of white powder, which turned out to be cocaine, wrapped in tin foil.

Hinkel's motion to suppress the seized cocaine was denied. He waived his right to jury trial and was convicted of possession of cocaine.

## ISSUES

1. Was the search of Hinkel pursuant to a warrant authorizing a search of "all persons on the premises" unconstitutional?

2. Was the search of Hinkel justified as a proper frisk for weapons to insure the officers' safety?

## ANALYSIS

### I.

Hinkel contends the search of his person pursuant to the "all persons on the premises" language of the warrant violated his constitutional right because there was no showing of probable cause to believe he would be present on the premises and that he would be involved in the illegal activities at the premises. He also claims the warrant lacks specificity in that it did not identify the persons to be searched. Finally he contends the scope of the search of his person was overly intrusive and in violation of his constitutional rights.

■ The Fourth Amendment directs that "no warrant shall issue but upon probable cause * * * and particularly describing the place to be searched and the persons or things to be seized." U.S. Const.amend. IV. "General warrants" are constitutionally prohibited. *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 325, 99 S.Ct. 2319, 2323, 60 L.Ed.2d 920 (1979). *See Stanford v. Texas*, 379 U.S. 476, 481–85, 85 S.Ct. 506, 509–11, 13 L.Ed.2d 431 (1975). Particularity in a search warrant

> is required in order that the executing officer can reasonably ascertain and identify * * * the persons or places authorized to be searched and the things to be seized. To protect the right of privacy from arbitrary police intrusion, the "core" of the Fourth Amendment * * *, nothing should be left to the discretion of the searcher in executing the warrant * * *.

*People v. Nieves*, 36 N.Y.2d 396, 401, 369 N.Y.S.2d 50, 57, 330 N.E.2d 26, 31 (1975) (citations omitted). *See State v. Gonzales*, 314 N.W.2d 825, 827 (Minn.1982); *State v. Swain*, 269 N.W.2d 707, 717 (Minn.1978); *State v. Schnorr*, 346 N.W.2d 380, 382 (Minn.Ct.App.1984).

■ In addition to a particularized description, the Fourth Amendment requires that there be probable cause to believe the property described in the warrant will be found at the specified location and in the possession of the persons so described. *State v. Sims*, 75 N.J. 337, 382 A.2d 638 (1978). The case here involves the unique situation where a warrant is issued to search unnamed persons at a specified place. This is uncommon because,

> [i]f there is probable cause to believe that a certain individual has on his person the evidence, fruits, or instrumentalities of crime, it would be an unusual case in which there was not also probable

cause to believe that this individual was a participant in the criminal activity under investigation. Thus, the more usual procedure is simply to arrest that person and then search him incident to the arrest * * *.

2 W. LaFave, Search and Seizure § 4.5 at 89 (1978).

■ The validity of a search pursuant to an "all persons on the premises" warrant is a question of first impression in Minnesota. Clearly, a search warrant authorizing the search of a building or premises does not give the officer the right to search all persons present. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979); *State v. Fox*, 283 Minn. 176, 179 168 N.W.2d 260, 262 (1969). A blanket search has the potential for sanctioning dragnet arrests of all persons present in a given place in which criminal activity is suspected, regardless of whether these individuals could be linked to any illegality. *People v. Laskaris*, 82 A.D.2d 34, 441 N.Y.S.2d 110 (1981). Hinkel urges that all such warrants are unconstitutional. We do not agree. In *State v. De Simone*, 60 N.J. 319, 288 A.2d 849 (1972), the New Jersey Supreme Court upheld the search of a passenger in an automobile and all persons found therein pursuant to such a warrant. In rejecting the contention that the warrant was invalid, the court employed an approach which required a showing of probable cause concerning the place to be searched and a reasonable belief that all persons found therein would be participants in the criminal activity. The court stated:

so long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment.

*Id.* at 322, 288 A.2d at 850.

The New York Court of Appeals has also clearly indicated that, in some circumstances, an "any person present" warrant can survive a constitutional attack. In *People v. Nieves*, the court stated:

The circumstances under which a warrant may issue for the search of all occupants of a particular place are severely limited: the facts before the issuing Judge at the time of the warrant application, and reasonable inferences from those facts, must establish probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the article sought.

36 N.Y.2d at 404, N.Y.S.2d at 60, 330 N.E.2d at 34. *See Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101 (1976); *People v. Betts*, 90 A.D.2d 641, 456 N.Y.S.2d 278 (1982).

It is therefore crucial to examine the facts which were before the judge at the time the warrant was sought. The affidavit in support of the search warrant cites complaints by neighbors that there was liquor and gambling inside the house at 162 N. Kent, that this was occurring after hours, and that informers had entered the premises and purchased alcohol illegally. The affidavit also states that the house had been under observation over several weeks, indicating an "inordinate amount of activity" on the weekends.

The state attempts to bolster the facts by pointing to circumstances in existence at the time the warrant was executed (liquor and bottles of drugs in plain view when the officers entered, along with weapons and dice and dominoes visible). We must examine the facts and circumstances before the issuing judge, not the facts in existence at the time the warrant is executed. *Nieves*, 36 N.Y.2d at 402, 369 N.Y.S.2d at 58, 330 N.E.2d at 32; *State v. Sims*, 75 N.J. 337, 349, 382 A.2d 638, 645 (1978).

■ Clearly the more public a place is the less likely a search of "all persons present" is sustained. For example, in *Nieves*, the search of all persons in a restaurant and cocktail lounge was held impermissibly broad as there was,

no support here for the inference that every occupant of the restaurant might be similarly engaged and hence in pos-

session of [illegal betting] records sought in the warrant.

The facts before the Judge did not indicate that the premises or a particular area within it was *limited* to criminal activity or that this activity was ongoing in time.

*Nieves*, 36 N.Y.2d at 403, 369 N.Y.S.2d at 59, 330 N.E.2d at 33. In *Sims*, service station premises, including the office area, were deemed "not as open to general public invitation as, for instance, a restaurant or department store might be * * *." *Sims*, 75 N.J. at 348, 382 A.2d at 644.

On the other hand, in *Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101 (1976), the warrant authorizing a search of a private apartment and any person present to look for heroin was upheld. Similarly, in *People v. Betts*, 90 A.D.2d 641, 456 N.Y.S.2d 278 (1982), a search of an apartment and any other person was upheld. Private premises are "less likely to contain innocent bystanders" especially when a strong police surveillance corroborated every detail supplied by an informant that the occupants were trafficking in drugs. The appellate court noted the difficulty of specifying each of the individuals who might be in the apartment at any one time.

■■■ Applications for warrants of this kind must be strictly scrutinized. *Smith*, 348 N.E.2d at 107; *Nieves*, 36 N.Y.2d at 404, 369 N.Y.S.2d at 60, 330 N.E.2d at 34. Guidelines set forth in *Nieves* are particularly helpful in ascertaining what such a warrant application should contain:

It must carefully delineate the character of the premises, for example, its location, size, the particular area to be searched, means of access, neighborhood, its public or private character and any other relevant fact. It must specifically describe the nature of the illegal activity believed to be conducted at the location, the number and behavior of persons observed to have been present during the times of day or night when the warrant is sought to be executed.

The application should also state whether any person apparently unconnected with the illegal activity has been seen at the premises. The warrant itself must limit the locus of the search to the area in which the criminal activity is believed to be confined and, according to the circumstances, may also specify the time for the search.

*Id.* at 404–05, 369 N.Y.S.2d at 60, 330 N.E.2d at 34 (footnote omitted). Whether the items described in the warrant are of a size and kind easily concealed on a person are also relevant factors.

■■■ While it is undoubtedly a close question, we believe the warrant cannot stand to justify the search of Hinkel. There was no showing that there was a substantial probability that *all* persons present would possess the items specified in the warrant. "[S]ome innocent person could happen to call upon the occupant of [a building] * *." *De Simone*, 60 N.J. at 323, 288 A.2d at 851. It is not a mere distant possibility that this warrant may have resulted in a dragnet of innocent persons. The defect in this warrant is that it is unsupported by any legitimate basis for concluding that there was probable cause to believe that all persons who might be found on the premises were engaged in criminal activities at all times. The warrant application did not include information on the number of persons observed to have been present when the warrant was sought to be executed; it did not indicate whether the premises at 162 N. Kent consisted of a private dwelling, a duplex, an apartment or even a commercial establishment. These are all relevant in scrutinizing the warrant. The application also failed to state who the owners and occupiers of the premises were, if known, or if anyone unconnected with illegal activity has ever been seen at the premises. Thus, we hold that the search of Hinkel cannot be justified on the basis of the warrant's authorization of a search of "all persons on the premises."

## II.

■■■ While the search warrant did not authorize the search of Hinkel, the warrant

was clearly valid to authorize the officers' presence at 162 N. Kent to search the premises. Thus, the next question is whether the search of Hinkel's person was permissible under any of the exceptions to the Fourth Amendment.

 Hinkel argues the search was unconstitutional because it was done without probable cause. While this may be true, under the doctrine of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the search was permissible. Police may take appropriate action to insure their own protection when executing a search warrant. *Id.* at 27, 88 S.Ct. at 1883. The facts are clear that, when the officers arrived at 162 N. Kent, they viewed handguns on the floor. They also saw many half pint bottles of liquor, cans of beer, controlled substances and gambling devices. The fact that the premises were being searched for controlled substances and the handguns were viewed upon entry supported the officers' knowledge that dangerous people who commonly carried weapons may have been involved. *See State v. Bitterman,* 304 Minn. 481, 485, 232 N.W.2d 91, 94 (1975). It was entirely reasonable to suspect that anyone present could be armed and otherwise dangerous. As such, a limited frisk for weapons was justified. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Sibron v. New York,* 392 U.S. 40, 65–67, 88 S.Ct. 1889, 1904–1905, 20 L.Ed.2d 917 (1968); *Bitterman,* 304 Minn. at 485–86, 232 N.W.2d at 94.

 Hinkel contends the scope of the search was overly intrusive because nothing more than a pat-down of his outer clothing was justified under *Terry:*

1. The testimony at the Omnibus Hearing on this point is as follows:
 Q. As far as the feel of the article is concerned, what did you suspect it was when you felt it?
 A. I really wasn't sure what it was at that point. Ah, I felt the article. I knew it was something that didn't belong there and I was really interested in what it was at that point.

The sole justification of [a pat down search] is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

*Terry,* 392 U.S. at 29, 88 S.Ct. at 1884. *See Ybarra,* 444 U.S. at 93–94, 100 S.Ct. at 343–344. The power to frisk cannot be used as a subterfuge to search. *See Johantgen v. Commonwealth,* 571 S.W.2d 110 (Ky.Ct.App.1978); *State v. Broadnax,* 98 Wash.2d 289, 654 P.2d 96 (1982); *People v. Leib,* 16 Cal.3d 869, 548 P.2d 1105, 129 Cal.Rptr. 433 (1976); *Commonwealth v. Silva,* 366 Mass. 402, 318 N.E.2d 895 (1974).

 It is clear from the officer's testimony that he did not believe what he felt was a weapon.[1] Consequently, the language of *Bitterman* does not justify removal:

[W]here a frisk is appropriate, the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing, justifies the removal of that object. * * Since weapons are not always of an easily discernible shape, a mockery would be made of the right to frisk if the officers were required to positively ascertain that a felt object was a weapon prior to a removing it.

*Bitterman,* 304 Minn. at 486, 232 N.W.2d at 94. *State v. Ludtke,* 306 N.W.2d 111 (Minn.1981) likewise does not justify removal. In *Ludtke,* the supreme court upheld a frisk for weapons and a subsequent intrusion into defendant's pocket to seize a soft plastic package which the officer assumed contained a controlled substance.

Q. Were you suspecting contraband?

. . . . .

THE WITNESS: I suspected that.
Q. Did you not suspect at that point that it was a dangerous weapon?
A. No, at that point, I didn't—I didn't suspect it was, no.

While the plastic bag of powder was soft and presumably did not feel like a weapon through the clothing, [the officer] was justified in searching and seizing it because he had already found a plastic bag of marijuana in the other shirt pocket and therefore could assume that this packet which he had felt also contained drugs.

*Id.* at 113. *See U.S. v. Bell*, 464 F.2d 667 (2d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972); *State v. Yarbrough*, 26 Or.App. 475, 552 P.2d 1318 (1976).

There had been no initial recovery of a controlled substance on Hinkel that would have justified further search.

The frisk was overly intrusive.

## DECISION

The evidence obtained in a search of Hinkel's person was unconstitutionally seized. Although the search was a lawful pat-down search for weapons, where there was no suspicion that Hinkel carried any dangerous weapon on his person, drugs discovered in his waistband were improperly seized.

Reversed.