STATE of Minnesota, Respondent,

v.

Timothy Joseph GOBELY, Appellant.

No. C6–83–1569.

Court of Appeals of Minnesota.

July 3, 1984.

Review Granted Sept. 12, 1984.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Ragnhild Anne Westby, St. Paul, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and FORSBERG and RAN-DALL, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by the defendant, Timothy Joseph Gobely, from a conviction by a jury of receiving stolen property. The trial court found that a search of the defendant did not violate his fourth amendment rights. We disagree, and reverse.

## FACTS

On April 22, 1983 a warrant was issued authorizing the search of an apartment in Roseville, Minnesota, for certain items of stolen property. The three residents of the apartment were present when the officers arrived. Among the items seized during the search were two bags of new jewelry, which one occupant of the apartment admitted was stolen.

During the course of the search, the officers were interrupted by the defendant who had arrived at the apartment building and who was attempting to gain entrance by throwing objects at the apartment and gesturing toward the locked door of the building. One of the officers walked down the stairs, opened the door to the building, and admitted the defendant, who asked if she was answering the door for one of the occupants of the apartment. When the officer responded affirmatively, the defendant proceeded up the stairs and into the apartment being searched, chattering about how he had to drive over each time he wanted to talk, since the owners of the apartment did not have a telephone. Upon his entrance into the apartment, the officers performing the search moved towards the doorway, and one officer asked him to identify himself. The defendant stated that he would not answer, and moved 90 degrees to the right. At this, one officer directed the defendant to put his hands on the wall, in order to frisk him for weapons.

During the frisk, the officer felt a hard object on the person of the defendant, which turned out to be a jewelry box. The officer opened the box and found two more rings and a pendant, with tags attached which were similar to the tags on the stolen jewelry found in the apartment. Thereupon the defendant was formally placed under arrest for possession of stolen property. At the Rasmussen hearing the trial court determined that the above search did not violate the defendant's constitutional rights, and allowed evidence of the search to be admitted at trial.

## ISSUE

Whether the trial court properly ruled that the search did not violate defendant's fourth amendment rights.

## ANALYSIS

 We find that the frisk of the defendant and resultant discovery of the stolen jewelry was not justified by the circumstances and behavior of the defendant. *Terry v. State of Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968) allows an officer to conduct a limited search for weapons when the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." The standard is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*, at 27, 88 S.Ct. at 1883.

In *State v. Bitterman*, 304 Minn. 481, 232 N.W.2d 91 (1975), the defendant had also arrived at an apartment which was being searched pursuant to a valid warrant. The court noted: "[W]e would ordinarily agree that the mere knocking on a door of premises which are being lawfully searched does not make one subject to a search," *Id.*, 304 Minn. at 484, 232 N.W.2d at 94; however, the court went on to indicate that additional factors warranted the frisk—namely, the officers' knowledge that drug users who often carried weapons were involved with the premises being searched, and the officers' recognition of the defendant as a drug user.

It is the State's position that, similarly, in the present situation there were additional factors warranting the frisk. The State particularly argues that: (1) the officers had recently discovered in the apartment evidence of a robbery during which weapons had been taken; (2) the defendant's obvious display of familiar behavior towards the occupants of the apartment raised the possibility of the defendant's possession of those or other weapons; (3)

these facts, when coupled with the defendant's refusal to disclose his identity and 90 degree movement, justified the officers' frisk of the defendant for weapons.

These additional circumstances, however, do not appear to have warranted a belief by the officers that their safety was endangered. In *United States v. Clay*, 640 F.2d 157, 158 (8th Cir.1981) the court discussed the following similar fact situation:

> Shortly after the search began [and after marijuana, firearms and ammunition had been discovered in the house], appellant, who was neither a suspect in the investigation nor an anticipated subject of the search, approached the house, knocked on the storm door and was confronted by Sergeant Tom Moss, an undercover police agent who was dressed in blue jeans and a T-shirt. Sgt. Moss opened the door, displayed his badge and identification, and ordered appellant into the house. Appellant immediately stepped backwards but did not attempt to run away. Sgt. Moss pulled out his revolver and again ordered appellant into the house. Appellant entered the house whereupon Sgt. Moss requested his investigator to conduct a pat down search. A small quantity of marijuana and a gun were discovered.

In addressing arguments by the state similar to those presented in this instance, the *Clay* court first noted that a person's mere arrival at the scene of a search does not provide grounds for a frisk. The court especially noted that nothing in particular established a nexus between the defendant and the contraband, and that "[b]ecause there was an opportunity for inquiry when [the defendant] appeared at the door, inquiry should have been made." *Id.*, at 161. In a note the court stated further: "In the interest of his own protection [the officer] could have denied appellant the right to enter the premises while the search was being conducted ... Whenever possible, an effort should be made to avoid potentially dangerous confrontations between police and private citizens." *Id.*, at 162. Similarly, in the present instance the officers could have either refused to go down the stairs to open the door or questioned the defendant at that time.

In *Clay*, the defendant hesitated and stepped back when confronted by the police; in this instance the defendant turned 90 degrees to the right. Neither action was so inherently suspicious as to justify a search.

Finally, the *Clay* court noted:

> To justify a search of this type, the officer must have knowledge that the visitor previously had been engaged in serious criminal conduct ... or that suspicion exists sufficient to draw a reasoned conclusion that the visitor is involved in the criminal activity that constituted the basis of the issuance of the search warrant ... or that other exigent circumstances exist that justify a determination that the person with whom the officer is dealing may be armed or presently dangerous ...

*Id.*, at 161–162. The *Clay* court concluded that the police officer "had nothing more than 'mere suspicion' of possible criminal activity or danger based upon [the defendant's] approach to the house." *Id.*, at 162. Similarly, we conclude that in the present situation the police officers had no reasonable basis upon which to conclude that their safety was endangered.

## DECISION

The evidence obtained from the unlawful frisk of the defendant should have been suppressed at trial. We reverse.