**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Timothy Joseph GOBELY, Respondent.**

No. C6–83–1569.

Supreme Court of Minnesota.

April 26, 1985.

Rehearing Denied July 1, 1985.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for appellant.

Ragnhild Ann Westby, St. Paul, for respondent.

PETERSON, Justice.

Defendant, Timothy Joseph Gobely, was found guilty by a district court jury of receiving stolen property in excess of $1,000, in violation of Minn.Stat. § 609.53 (1984), and was sentenced to 52 months' imprisonment. The Minnesota Court of Appeals reversed defendant's conviction as based upon evidence obtained from an unlawful frisk, holding that police officers executing a search warrant in an apartment were not justified in frisking an individual who was seeking entrance to that apartment under circumstances that were not suspicious. 351 N.W.2d 39. We reverse.

On April 22, 1983, a warrant was issued authorizing the search of a second-floor apartment and its storage area in Roseville, Minnesota, for certain items of stolen property. The warrant was based upon the affidavit of an informant concerning thefts committed in a 4-month period by the occupants of the apartment and others.

At about 12:30 p.m. that day, a team of law enforcement officers arrived at the apartment to execute the warrant. Three residents of the apartment, plus a fourth individual, were present when the officers arrived. Among the items seized during the search were two bags of jewelry, which one of the occupants of the apartment admitted had been stolen.

During their search, the officers were interrupted by defendant, who had arrived at the apartment building and was attempting to gain entrance by throwing objects at a window and gesturing toward the locked, rear door of the building. One of the officers, a policewoman who was not in uniform, walked down the stairs, opened the door to the building, and admitted defendant. Defendant asked if she was answering the door for one of the occupants of the building. Without identifying herself as a policewoman, the officer responded affirmatively. Defendant then proceeded up the stairs, "chattering" about how he had to drive to the apartment each time he wanted to talk because the residents of the apartment did not have a telephone. When he reached the apartment, the door was slightly ajar, and defendant entered without knocking.

Once inside the apartment, defendant was surrounded by police officers who identified themselves and requested that defendant do the same. Defendant replied that he did not have to identify himself and made a 90-degree turn, as if to leave. The officers grabbed defendant by the arms, and one of the officers then directed defendant to put his hands on the wall, which he did.

As soon as defendant placed his hands on the wall, one officer noted two wedding rings with diamonds on his left hand and a single wedding ring on his right hand that were similar to the jewelry already recovered in the apartment search. Another officer conducted a patdown frisk for weapons, during which he and a third officer also noted the rings on defendant's hands, as well as an apparently new Pulsar gold watch on defendant's left wrist. While frisking defendant, the officer encountered a solid object that might have been a weapon. Upon removing it, the officer discovered that it was a jewelry box. He opened the box and found two more rings and a pendant with tags attached that were similar to the tags on the stolen jewelry found in the apartment. Defendant was thereafter formally placed under arrest for possession of stolen property and taken to jail. In routine booking procedures, the jailer discovered a gold chain necklace in the pocket of defendant's jacket.

All jewelry found in defendant's possession was identified as having been taken in an early-morning burglary of a jewelry store on April 21, 1983, the day before the warrant was issued. At the omnibus hearing, the trial court determined that the search of defendant had not violated his constitutional rights and allowed the jewelry to be admitted into evidence at trial.

1. The primary issue on appeal is whether this search of defendant and seizure of the jewerly constitutes a violation of defendant's rights under the Fourth and Fourteenth Amendments of the United States Constitution. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a police officer may stop an individual on less than probable cause when faced with sufficiently suspicious behavior to warrant further investigation and may conduct a reasonable search for weapons where the police officer "has reason to believe that he is dealing with an armed and dangerous individual." *Id.* at 27, 88 S.Ct. at 1883. To justify the intrusion, the police must be able to point to specific and articulable facts which, taken together with rational inferences, would " 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Id.* at 22, 88 S.Ct. at 1880.

■ We must first consider whether the officers articulated facts sufficient to justify the initial seizure of defendant. In its recent decision in *United States v. Hensley*, ─ U.S. ─, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the United States Supreme Court extended *Terry* to authorize investigative stops based upon a suspicion that the individual had been involved in a completed crime. Specifically, the court stated that "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Id.* 105 S.Ct. at 681. *See also State v. Gilchrist*, 299 N.W.2d 913 (Minn.1980). In this case, the officers had recovered admittedly stolen property within the apartment and knew that individuals in addition to the occupants, some of whom had been named by an informant, had participated in the thefts. Defendant was obviously acquainted with the occupants and had refused to identify himself when asked, instead turning as if to leave. Under the circumstances, we conclude that the officers were justified in stopping defendant.

■ We similarly conclude that the officers were justified in suspecting that defendant might be armed and dangerous and in conducting a search for weapons. Defendant's mere presence at the premises being searched would not in itself ordinarily justify a search for weapons, *see, e.g., Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *State v. Bitterman*, 304 Minn. 481, 484, 232 N.W.2d 91, 94 (1975), nor would his refusal to identify himself in addition to his presence. *State v. Fox*, 283 Minn. 176, 168 N.W.2d 260 (1969). The combined factors in this case, however, reasonably led the experienced officers to suspect that defendant was arm-

ed and dangerous. The police had discovered admittedly stolen goods in the apartment. An informant had reported that in at least one robbery the participants had been armed, and the officers knew that some of the goods recovered in the apartment corresponded with those reported to have been stolen in a robbery in which firearms had also been taken. Although no weapons were recovered in the apartment during this particular search, a sawed-off shotgun similar to one the informant had described as being used in one robbery had been recovered next to a freeway fence near the apartment a few days earlier.

In addition, the officers had been informed that individuals other than the apartment's residents had participated in the robberies, and they had ample reason to fear that defendant might be one of these participants. We are not here dealing with a patron in a public place that is being searched who has no more connection to the crime than "mere propinquity to others independently suspected of criminal activity," *Ybarra*, 444 U.S. at 91, but with an individual who arrived at a private apartment and was obviously acquainted with at least one of the named participants in the robberies. Defendant's refusal to identify himself and attempt to leave supported the officers' fears that defendant was involved in the robberies. Finally, prior to the actual patdown search of defendant, at least one officer saw on defendant's fingers rings similar to those already recovered and known to be stolen. Taken together, these factors adequately support the officers' belief that defendant may have been a participant in the crimes and that he might be armed and dangerous.

2. The record before us gives us adequate basis for deciding two issues which the court of appeals had no occasion to address, so that in the interest of judicial economy, we will address them here, without necessity for remand. These issues are whether the evidence was sufficient to support defendant's conviction and whether defendant was denied effective assistance of counsel.

Defendant contends that the evidence was insufficient to support his conviction and that the jury in fact convicted him not because of the evidence but because of the prejudicial effect of testimony about defendant's past theft convictions. We find this claim patently without merit. Four officers testified that defendant had stolen jewelry in his possession, clearly sufficient evidence to support defendant's conviction. Moreover, because defendant testified, evidence of past convictions reflecting on his veracity was properly admissible for impeachment purposes. Minn.R.Evid. 608, 609. Although admission of the convictions no doubt had a prejudicial effect, the effect was undoubtedly less prejudicial than the testimony that had already been admitted against defendant, and we conclude that the trial court did not abuse its discretion in admitting the evidence. *State v. Walker*, 310 N.W.2d 89, 91 (1981).

3. Defendant also charges that his trial counsel was so inadequate that he was, in effect, denied effective assistance of counsel, in violation of his sixth amendment rights. The test of effective counsel is "whether the attorney in the case under consideration exercised the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances." A defendant claiming ineffective counsel has the burden of proving that he is entitled to a new trial. *State v. Heinkel*, 322 N.W.2d 322, 326 (1982). Our review of the record convinces us that while defendant and his counsel disagreed at times about trial strategy, defendant's counsel in no way inadequately represented him or harmed his chances for acquittal.

Reversed.

WAHL, Justice (dissenting).

I respectfully dissent. The seizure and search of the defendant under the facts and circumstances of this case was impermissible under the Fourth and Fourteenth Amendments of the United States Constitution. Six law enforcement officers—two

deputies from the Hennepin County Sheriff's office, two deputies from the Ramsey County Sheriff's office and two officers from the Roseville Police Department—had spent approximately an hour searching the second floor apartment of Tim Ledford, pursuant to warrant, when defendant caught their attention from the parking lot below, indicating, by honking his horn, gesturing, and tossing a plastic shaving bottle cap against the window, that he wanted in. By this time the officers had the four occupants of the apartment under arrest and had finished searching the apartment, finding two bags of stolen jewelry but no firearms or weapons. Deputy Marie Ballard, who was in street clothes as were five of the six officers, went down to the first floor at Deputy Allan Anderson's request to let in the young man whom two of the officers later testified was nicely dressed and whom none of the officers knew or had expected to find at the apartment in connection with their search for stolen property.

Deputy Ballard unlocked the security door for defendant and, without asking his name, followed him up the stairs as he chatted about Rick's laziness and lack of a telephone. Defendant walked in the slightly-opened door of Ledford's apartment and was encountered in the hallway by Deputies Anderson and Lucas who identified themselves as police officers and asked who he was. The two officers were close in front of him, Ballard had entered the hallway behind him. Defendant said he did not have to tell them who he was and turned, the officers agreed, as if to leave the apartment. At this point Deputy Lucas grabbed defendant's left arm, Deputy Anderson grabbed his right shoulder and they put him against the wall and searched him. As Deputy Anderson said at the omnibus hearing, "I wanted him to have a pat down search, you know, it was just a rou-."

It was not a routine stop and frisk. It was a seizure and search similar to that we prohibited in *State v. Fox*, 283 Minn. 176, 168 N.W.2d 260 (1969). In *Fox*, police officers, executing a warrant to search an apartment for stolen merchandise, searched Fox, who was present on the premises, for weapons and in his wallet found marijuana. There we said that "a mere exploratory search of the person of a defendant for evidence is violative of Fourth Amendment rights and that the test of reasonableness may not lie in an unparticularized suspicion or hunch." *Fox*, 283 Minn. at 179–80, 168 N.W.2d at 262.

In the case of Timothy Gobely, the officers lacked probable cause to search the defendant at the moment he entered the apartment. They had no knowledge nor reason to believe he was connected with any criminal activity. When they seized him and spread him against the wall, they knew at most that he was apparently acquainted with the residents of the apartment. Neither did the officers have a reasonable, articulable suspicion that he was armed and dangerous nor did they fear for their safety as required by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), so as to justify a frisk. As Judge Forsberg noted below, "the officers could have either refused to go down the stairs to open the door or questioned the defendant at that time." *State v. Gobely*, 351 N.W.2d 39, 41 (Minn.App.1984). *See also, United States v. Clay*, 640 F.2d 157, 162 (8th Cir.1981). The search was invalid. This result is not changed by the fact that the rings and the watch were observed during the course of the search.

I would affirm the decision of the Court of Appeals.

COYNE, Justice (dissenting).

I join in the dissent of Justice WAHL.