# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0220

Justin Stephen Ries, petitioner,
Respondent,

vs.

State of Minnesota,
Appellant.

**Filed December 19, 2016**
**Affirmed**
**Bjorkman, Judge**

Ramsey County District Court
File No. 62-CR-13-178

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz-Godes, Assistant Public Defender, St. Paul, Minnesota (for respondent)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Bjorkman, Judge; and Jesson, Judge.

## S Y L L A B U S

A defendant is not required to use a peremptory challenge to strike a juror who should have been removed for cause in order to preserve the claim that the for-cause denial impaired the defendant's right to a fair trial.

**O P I N I O N**

**BJORKMAN**, Judge

Appellant State of Minnesota challenges the postconviction court's reversal of respondent Justin Stephen Ries's conviction for ineligible possession of a firearm and grant of a new trial due to juror bias. Ries appeals the denial of his motion to suppress evidence obtained as a result of a warrantless search and seizure. We affirm.

**FACTS**

S.A. lived in an apartment in St. Paul with her brother and her six-month-old son. During the evening of January 4, 2013, Ries and two other men came over to visit S.A.'s brother. S.A. did not know Ries but was told, before he arrived, that the men from Iowa (one of whom was Ries) would leave their guns in the car. The adults drank alcohol late into the evening while the child slept in S.A.'s bedroom. S.A. woke up at about 3:30 a.m. and saw that the men had passed out, with the exception of Ries, who was trying to lift himself from the living room floor onto a couch. S.A. noticed the butt of a gun tucked in the waistband of Ries's jeans. Unable to wake her brother, S.A. called 911. She told the dispatcher that she could not sleep knowing that one of the intoxicated men had a gun, especially with her young child in the apartment. She asked the dispatcher to send officers to remove the men from the apartment.

St. Paul Police Officer Jeffery Korus was the first to arrive at the scene; S.A. met him outside. She explained the layout of the apartment, and described Ries's appearance, location on the couch, and where the handgun would be found. After officers Zachary Tabatt and Rod Larson arrived, the three entered the apartment in order to "remove the

2

males from the apartment" and "secur[e] the handgun." Ries was sleeping on his back. The officers were concerned about startling Ries as he woke up, so they decided to first remove the gun from his possession. Officer Tabatt secured Ries's hands and Officer Korus placed them in cuffs before patting Ries's clothing. When the officers could not find the gun, they rolled Ries over and saw the butt of the gun inside Ries's coat, under his side. Officer Korus retrieved the gun, which contained six live rounds. It took the officers a minute to awaken and identify Ries. After learning that Ries was not eligible to possess a firearm, Officer Tabatt placed him under arrest.

The state charged Ries with ineligible possession of a firearm. Ries moved to suppress evidence of the gun as the fruit of an unconstitutional search and seizure. The district court denied Ries's motion, reasoning that Ries's seizure was justified by the emergency-aid exception to the warrant requirement.[1] During voir dire, potential juror A.P. disclosed that she was employed as a 911 dispatcher for the Washington County Sheriff's Department. A.P. stated that she would give more weight to a police officer's testimony because she considers herself to be their "backup." And she later added that she would likely interpret things in a 911 call that other people "might not be trained to hear" and that it would be hard for her to turn that off. Despite the prosecutor's attempts to rehabilitate A.P., she ultimately stated that she would side with police officers if there was a conflict in the testimony.

---

[1] Under the emergency-aid exception, a warrantless seizure and search may be justified where there is a need to render aid or assistance in an emergency situation. *State v. Lopez*, 698 N.W.2d 18, 23 (Minn. App. 2005). After the jury began deliberating, Ries moved the district court to reconsider its suppression ruling, which the court denied.

3

Ries moved to strike A.P. for cause. The district court questioned A.P. further, then denied the motion, determining that A.P. was sufficiently rehabilitated. Ries did not use one of his five remaining peremptory challenges to remove A.P., who served as a juror. The jury found Ries guilty. On August 29, 2013, the district court sentenced Ries to 48 months in prison.

On August 19, 2015, Ries filed a petition for postconviction relief, alleging that denial of his motion to remove A.P. for cause was structural error. Ries also alleged that the district court committed reversible error by denying his motion to suppress the gun.[2] The postconviction court denied the suppression motion, reasoning that Ries was not seized. But the postconviction court granted Ries's motion for a new trial because juror A.P. expressed actual bias and was not rehabilitated.

The state appeals the reversal of Ries's conviction and grant of a new trial. In a related appeal, Ries challenges the denial of his motion to suppress the gun evidence.

## ISSUES

I.  Did the postconviction court abuse its discretion in granting Ries a new trial based on the presence of a biased juror?

II. Did the postconviction court abuse its discretion in denying Ries's suppression motion?

## ANALYSIS

We review the grant or denial of a postconviction petition for an abuse of discretion. *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015). We consider "whether the

---

[2] The same judge presided over the trial and the postconviction proceedings.

4

postconviction court's findings are supported by sufficient evidence." *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012) (quotation omitted). But we review legal issues de novo. *Matakis*, 862 N.W.2d at 36.

## I. The postconviction court did not abuse its discretion in granting Ries a new trial because juror A.P. expressed actual bias and was not properly rehabilitated.

A defendant in a criminal case has the constitutional right to a trial by an impartial jury. U.S. Const. amend. VI; Minn. Const. art. I, § 6. Because the impartiality of the fact-finder implicates "the very integrity of the legal system[,] [t]he bias of a single juror violates the defendant's right to a fair trial." *State v. Brown*, 732 N.W.2d 625, 630 (Minn. 2007) (citation omitted). A juror may be removed for cause if the juror's state of mind, in reference to the case or to a party, "satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the challenging party." Minn. R. Crim. P. 26.02, subd. 5 (1)1. "Permitting a biased juror to serve is structural error requiring automatic reversal." *State v. Fraga*, 864 N.W.2d 615, 623 (Minn. 2015).

### A. Ries did not forfeit his right to contest the denial of his for-cause challenge by not using a peremptory challenge to remove A.P.

During voir dire, the district court denied Ries's for-cause challenge to A.P. Ries declined to use a peremptory challenge to remove A.P. The state contends that Ries forfeited his right to challenge A.P. for cause by failing to do so. We disagree.

The state relies on *State v. Logan* to support its forfeiture argument. 535 N.W.2d 320, 324 (Minn. 1995). In *Logan*, the district court failed to excuse a juror for cause who admitted that he would credit police testimony over that of other witnesses. Logan had

5

already used all of his peremptory challenges when his for-cause challenge was rejected. The supreme court reversed Logan's conviction, concluding that it is structural error for a biased juror to sit in judgment. *Id.* But the court noted in dicta that "[i]f defendant had then had peremptory challenges available and had not exercised one of them to strike K.G., then the question would be whether defendant could complain about K.G.'s sitting on the jury." *Id.*

But in *United States v. Martinez-Salazar*, the Supreme Court rejected the state's argument, holding that a defendant does not have to use a peremptory challenge to remove a juror who should have been removed for cause. 528 U.S. 304, 315-16, 120 S. Ct. 774, 781 (2000). The Supreme Court resolved a split in authority that had required a defendant to use a peremptory challenge to strike a juror "in order to preserve the claim that the for-cause ruling impaired the defendant's right to a fair trial." *Id.* at 315, 120 S. Ct. at 781. Martinez-Salazar argued that his due-process rights were violated because he was forced to use a peremptory challenge. The Supreme Court disagreed, reasoning that loss of a preemptory challenge, without more, does not implicate the Sixth Amendment and Martinez-Salazar used his peremptory challenge in accord with a primary purpose of such challenges—"to help secure the constitutional guarantee of trial by an impartial jury." *Id.* at 315-16, 120 S. Ct. at 781-82. But the Supreme Court rejected the government's contention that federal law requires a defendant to use a peremptory challenge to preserve his Sixth Amendment challenge. Rather, the Supreme Court concluded that a defendant has the choice of either using a peremptory challenge or permitting the juror to serve and pursuing a Sixth Amendment challenge on appeal. *Id.* at 315, 120 S. Ct. at 781-82.

We conclude that the Supreme Court's decision in *Martinez-Salazar* applies here. First, *Martinez-Salazar* was decided after *Logan*, answering the question our supreme court posed in *Logan* concerning whether the outcome would have been different if Logan had not used all his peremptory challenges when his for-cause challenge was denied. Second, the relevant language of Fed. R. Crim. P. 24 is the same as Minn. R. Crim. P. 26.02. *See State v. Head*, 561 N.W.2d 182, 186 (Minn. App. 1997), *review denied* (Minn. May 20, 1997) (looking to federal caselaw for guidance in construing Minn. R. Evid. 609(a)(2)). For the reasons articulated in *Martinez-Salazar*, we decline to limit rule 26.02 to require a defendant to use a peremptory challenge to preserve his argument that denial of a for-cause challenge impaired his right to a fair trial. *Martinez-Salazar*, 528 U.S. at 315, 120 S. Ct. at 781. Accordingly, we conclude that Ries preserved his argument that he was deprived of his Sixth Amendment right to an impartial jury.

**B.    The postconviction court did not abuse its discretion in finding A.P. expressed actual bias and was not properly rehabilitated.**

Actual bias is a question of fact that the district court is in the best position to evaluate. *State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008). "We give great deference to a district court's findings of fact regarding juror bias, and review a district court's decision to seat a juror for abuse of discretion." *Fraga*, 864 N.W.2d at 623 (quotation and citation omitted). Likewise, we will not reverse a postconviction court's factual determination absent clear error. *Matakis*, 862 N.W.2d at 36.

The challenging party has the burden of proving that the juror "exhibited strong and deep impressions that would prevent her from lay[ing] aside [her] impression or opinion

7

and render[ing] a verdict based on the evidence presented in court." *State v. Munt*, 831 N.W.2d 569, 577 (Minn. 2013) (alterations in original) (quotations omitted). In determining whether the burden is met, reviewing courts must: (1) determine if the juror expressed actual bias by reviewing the juror's voir dire answers in context and (2) if the juror expressed actual bias, determine whether the juror was properly rehabilitated. *Fraga*, 864 N.W.2d at 623. A juror is rehabilitated if she states unequivocally that she will "follow the district court's instructions" and "set aside any preconceived notions and fairly evaluate the evidence." *Id.* (quotations omitted). Our supreme court has found rehabilitation inadequate when jurors state that they would "try," "do their best," "think they could," "think it would be hard," or "guess" they could set aside their bias. *See id.* at 625 (finding a juror's ambiguous acknowledgement that "I think it would be hard" to be probative of bias); *State v. Nissalke*, 801 N.W.2d 82, 107 (Minn. 2011) (finding a juror's statement that he would "try to" treat other testimony similar to the testimony of a police officer probative of bias); *State v. Prtine*, 784 N.W.2d 303, 311 (Minn. 2010) (finding juror biased who said she would be more inclined to believe a police officer's testimony and only said "I think" or will "try" to be fair); *Logan*, 535 N.W.2d at 324 (finding a juror who said he would "try" to set aside prior biased opinions to be biased).

It is undisputed that A.P. expressed actual bias; the dispositive question is whether she was rehabilitated. After stating that she is a 911 operator and would likely catch things in a 911 call that others would not be trained to hear, A.P. admitted that it would be difficult for her to put her knowledge and experience aside. The district court asked A.P. if she

8

would give "more or less weight to a peace officer simply because they are a peace officer," to which she responded:

> I think I would. Just as a 911 operator, I would believe that they were giving the facts the way they understand them, and I think that I would have a better understanding of where they were coming from as peace officers having been their partner essentially off the street. So whether or not I would think that it was more credible than the suspect's—also his version, no.

When asked to clarify this statement, A.P. responded, "I think if we were at the point where they were both severely conflicted with each other, then I think I would side with the police officer . . . [p]robably because I would believe that he wasn't lying, and I might believe that the suspect was." The district court inquired further about the basis of this belief, and A.P. responded:

> Ah, I don't know, because I've known some peace officers that I probably wouldn't believe, so I—that's a hard question, and I guess without knowing the facts, you know, I—I would honestly try to look at both sides. But I do know from experience that they conflict a lot. . . . So I certainly would do my best to be fair.

When the district court again asked why A.P. would believe a peace officer over another witness, A.P. stated:

> I guess probably what you said is that they—the defendant in this instance has more at stake I guess would be probably to, you know—they do have more at stake in this instance, so I would hope the peace officer was being objective. But not hearing the case, it's hard to say.

Finally, the district court initiated the following exchange.

> THE COURT: All right. And are you going to base your decision solely on the fact that it's a peace officer—
> PROSPECTIVE JUROR P: No.

THE COURT:  —that's testifying?

PROSPECTIVE JUROR P:  No.

Careful review of A.P.'s statements in context persuades us that A.P. was not properly rehabilitated.  A.P. thought of herself as a police officer's "partner[] off the street," and candidly stated she would find an officer's testimony more credible.  A.P.'s statement that she would "do [her] best to be fair" is far from an unequivocal statement that she would not be biased.  *Nissalke*, 801 N.W.2d at 107.  A.P. was the one who first raised concern about her experience as a 911 operator interfering with her ability to be neutral and impartial.  And the final question posed by the district court did not sufficiently rehabilitate A.P.  By using the word "solely," the question leaves open the possibility that bias in favor of police officers would be part of A.P.'s credibility determinations, just not the *sole* basis of such determinations.

On this record, we discern no clear error in the postconviction court's findings that A.P. demonstrated bias in favor of the state's law enforcement witnesses and was not properly rehabilitated.  Accordingly, we conclude that the postconviction court did not abuse its discretion in determining that Ries is entitled to a new trial.

**II.     The postconviction court did not abuse its discretion in denying Ries's suppression motion because his seizure and limited pat search were reasonable.**

The state and federal constitutions guarantee the right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV; Minn. Const. art. I, § 10.  Warrantless searches and seizures are "*per se* unreasonable unless they fall under an established exception" to the warrant requirement.  *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992).  "If a warrantless search does not fall within a proper exception, its fruits must be

10

suppressed." *Id.* Whether a warrantless search is constitutional is a legal issue that we review de novo. *State v. Waddell*, 655 N.W.2d 803, 809 (Minn. 2003).

S.A. contacted the police out of concern that an intoxicated man had a gun in the presence of her child. Ries does not challenge the officers' presence in the apartment. But he contends that their actions in holding his hands, rolling him over on the couch, and removing the gun constitute a seizure and search that violated his constitutional rights. We are not persuaded.

We first conclude that Ries was seized when his hands were secured. The standard for determining whether a seizure has occurred is whether, under the totality of the circumstances, "a reasonable person in the defendant's shoes would have concluded that he or she was not free to leave." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 780 (Minn. 1993). A variety of circumstances indicate a seizure, including "'some physical touching of the person of the citizen.'" *Id.* at 781 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980)). In the process of waking Ries up, the officers grabbed his hands, placed him in handcuffs, rolled him over, and patted the outside of his clothing. We are convinced that a reasonable person, under the totality of these circumstances, would not feel free to leave. Accordingly, we conclude that a seizure occurred.

Having determined that Ries was seized, we turn to whether the pat search falls within an exception to the warrant requirement. The district court concluded that the search fell within the emergency-aid exception. *See State v. Lemieux*, 726 N.W.2d 783, 788-90 (Minn. 2007) (holding warrantless entry of residence was justified by need to search for

11

intruders or injured occupants); *see also Lopez*, 698 N.W.2d at 23 (concluding warrantless seizure of unconscious driver was justified by emergency-aid exception). In response to Ries's postconviction petition, the court determined that the officers acted reasonably under the broader community-caretaking exception to the warrant requirement.[3]

On appeal, the state argues, for the first time, that the search was a valid *Terry* protective frisk. *State v. Grunig*, 660 N.W.2d 134, 137 (Minn. 2003) ("A respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted."). A protective pat search of a person's outer clothing is a recognized exception to the warrant requirement if "the officer has a reasonable, articulable suspicion that the person whom the officer has lawfully detained may be armed and dangerous." *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014) (citing *Terry v. Ohio*, 392 U.S. 1, 26-27, 88 S. Ct. 1868, 1882-83 (1968)). Although the state retreated from this position during oral argument, we find this argument persuasive.

In *Terry*, an officer was surveilling an area known for shoplifting offenses. He observed three men who appeared to be casing a store. 392 U.S. at 6, 88 S. Ct. at 1872. The officer approached the men and asked for identification. *Id.* at 6-7, 88 S. Ct. at 1872. As the men responded, the officer grabbed and spun Terry around, patted down the outside of his clothing, and felt what he believed to be a gun. *Id.* Terry was charged with carrying

---

[3] The emergency-aid exception to the warrant requirement is part of the community-caretaking function. *See Lemieux*, 726 N.W.2d at 787-88.

a concealed weapon and moved to suppress the gun as obtained in violation of the Fourth Amendment. *Id.* at 7, 88 S. Ct. at 1872. Before deciding the narrow question presented—whether, absent probable cause to arrest, "it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons"—the Supreme Court noted the importance of context. *Id.* at 9, 15, 88 S. Ct. at 1873, 1877. The Court observed that "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Id.* at 9, 88 S. Ct. at 1873.

With reasonableness as the touchstone of its analysis, the Supreme Court first noted that the officer was performing a legitimate investigative function (crime prevention) when he approached Terry and his companions. *Id.* at 22, 88 S. Ct. at 1880. The Supreme Court went on to state that it would be unreasonable to require officers to take unnecessary risks when they are justified in believing that a person whom they are investigating is armed and dangerous. *Id.* at 23, 88 S. Ct. at 1881. But the Court observed that the search must "be confined in scope to an intrusion reasonably designed to discover guns . . . or other hidden instruments for the assault of the police officer." *Id.* at 29, 88 S. Ct. at 1884. And in determining whether an officer acted reasonably in conducting a limited protective search, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 28, 88 S. Ct. at 1883.

Ries argues that *Terry* does not apply because "the officers did not have information that Ries had committed any crime or that he had remained in the apartment after having been asked to leave." But *Terry* applies more broadly to crime prevention, not just crime

13

apprehension. *See* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.2(a) (5th ed. 2012) (discussing *Terry* as permitting a stop or seizure when an officer reasonably suspects a person has committed, is committing, or is about to commit a crime). As noted above, the officer who frisked Terry did so not because he believed Terry *had* committed a crime, but because he believed Terry was going to do so. Accordingly, if an officer reasonably suspects a person is about to commit a crime, a protective pat search is warranted in the interests of officer and community safety. *United States v. Peep*, 490 F.2d 903, 905 (8th Cir. 1974) (concluding a pat search for weapons reasonable when officers knew the defendant had bragged about shooting a police officer); *State v. Gobely*, 366 N.W.2d 600, 602-03 (Minn. 1985) (holding pat search for weapons justified where defendant was in home where stolen items were found and informant reported that in at least one robbery the participants had been armed).

We are persuaded that the seizure and limited search of Ries were reasonable under the circumstances. S.A. asked law enforcement to remove intoxicated individuals from her apartment, including a man who had a gun. S.A. told the officers who had the gun and where they would find it. She also expressed fear for her sleeping child. Because Ries was sleeping, intoxicated, and armed, the officers were reasonably concerned about how he would react to their efforts to wake him. This concern extended not only to the officers, but to the safety of everyone in the apartment. The pat search was limited in both scope and duration. And it is undisputed that the officers were not searching for evidence of a crime.

14

In sum, the officers had reasonable suspicion that a startled Ries might commit a crime, and were warranted in the belief that their safety and the safety of others could be in danger. *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *see also* Minn. Stat. § 609.66, subd. 1(1) (2012) (prohibiting reckless handling of a gun to endanger safety of another). The scope of the pat search was limited to and commensurate with the risk to the officers and occupants of the apartment. As the postconviction court reasoned, "the constitution does not require law enforcement to sit and wait for [Ries] to awaken" in such cases. On this record, we conclude that the postconviction court did not commit legal error or otherwise abuse its discretion in denying Ries's suppression motion.

## D E C I S I O N

The postconviction court did not abuse its discretion in granting Ries a new trial because juror A.P. expressed actual bias and was not properly rehabilitated. And the postconviction court did not err in denying Ries's suppression motion because the seizure and search of Ries were valid under *Terry*.

**Affirmed.**

15