*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0703**

State of Minnesota,
Respondent,

vs.

Cody Logan Fohrenkam,
Appellant.

**Filed May 28, 2024
Reversed and remanded
Worke, Judge**

Hennepin County District Court
File No. 27-CR-22-3336

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Aaron G. Thomas, A. Christopher Brown, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota; and

Andrew Markquart, Great North Innocence Project, Minneapolis, Minnesota (for amicus curiae Great North Innocence Project)

Considered and decided by Frisch, Presiding Judge; Worke, Judge; and Gaïtas, Judge.

WORKE, Judge

Appellant challenges his second-degree murder conviction, arguing that the district court erred when it denied his motion to suppress statements made during a custodial interrogation. Additionally, appellant argues that the district court abused its discretion by failing to admit the testimony of an expert witness regarding eyewitness identifications and that the prosecutor committed prejudicial misconduct during closing argument. We conclude that the state failed to meet its burden to show by a preponderance of the evidence that appellant's statements were lawfully obtained. And because we cannot conclude that appellant's statements did not contribute to the verdict, we reverse and remand for a new trial.

**FACTS**

On February 9, 2022, a surveillance camera captured video of D.H., who was 15 years old at the time, as he walked home from school. D.H. and another male walked past one another. There was nobody else walking on the sidewalk at that time. The other male stopped, pulled a gun out of his backpack, and fired three shots at D.H. D.H. died from a gunshot wound to the head.

Investigators from the Minneapolis Police Department interviewed potential witnesses. One witness spoke to an investigator over the phone and described the shooter as a white male with a red beard, wearing red or orange pants, a black jacket, and a black backpack. Investigators "received a phone call from one of the commanders in [the] Hennepin County Sheriff's Office" on February 11. The commander told investigators

that "[h]e received a call from the Carlton County law enforcement agencies [that] indicated that they had received information involving" appellant Cody Logan Fohrenkam. This was the first-time investigators became aware of Fohrenkam. The same day that investigators received the tip about Fohrenkam, they added Fohrenkam's photo to a photographic lineup for possible witness identification. Two witnesses identified Fohrenkam from the photo lineup.

Investigators contacted law enforcement in Carlton County to attempt to locate Fohrenkam. Investigators learned that Fohrenkam was in custody in Carlton County for an unrelated criminal matter but was being released.

Investigators arrived at the Carlton County Sherriff's Department to question Fohrenkam about the murder of D.H. over an hour after Fohrenkam was ordered to be released. Prior to questioning, Fohrenkam was held in an interview room and was restrained with handcuffs. Investigators gave Fohrenkam a *Miranda*[1] warning; Fohrenkam confirmed that he understood. Fohrenkam then gave conflicting statements about his whereabouts on February 9. Investigators then arrested Fohrenkam for the murder of D.H. On February 22, respondent State of Minnesota charged Fohrenkam with second-degree murder, pursuant to Minn. Stat. § 609.19, subd. 1(1) (2020).

Fohrenkam moved to suppress statements made during the custodial interrogation, arguing that his continued detention following his court-ordered release was unlawful. The state waived an evidentiary hearing and instead the parties stipulated to two exhibits for

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966) (requiring procedural safeguards to protect a suspect in custodial interrogation from compelled self-incrimination).

the district court's consideration: (1) a copy of the Carlton County district court's release order, and (2) a video recording of the custodial interrogation. The district court denied the suppression motion, concluding that (1) the burden of proof rested with Fohrenkam, and (2) "[Fohrenkam]'s detention and interrogation did not violate the Constitution."

A jury trial was held in January 2023. The jury found Fohrenkam guilty as charged. The district court sentenced Fohrenkam to 463 months in prison. This appeal followed.

**DECISION**

Fohrenkam argues that he was unconstitutionally detained for a custodial interrogation. The state counters that Fohrenkam's post-release detention was merely the result of an administrative delay associated with standard release procedures. But the record on review is devoid of any evidence in support of the state's assertion that Fohrenkam was merely in the process of being released from detention, rather than being held in custody. Thus, the state has failed to satisfy its burden of showing that Fohrenkam's continued detention was lawful. And because Fohrenkam made his incriminating statements during this period of continued detention—which the state never justified by presenting evidence explaining the basis for such conduct—Fohrenkam's statements must be suppressed as the product of an unlawful seizure. Accordingly, we agree with Fohrenkam that the district court erred as a matter of law when it erroneously (1) placed the burden of proof on Fohrenkam as to the admissibility of his statements, and (2) made a finding of fact that was unsupported by the evidence. We reverse and remand.

When considering a challenge to a district court's pretrial ruling on a motion to suppress evidence, appellate courts review factual findings for clear error and legal

4

conclusions de novo. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011).[2] "When reviewing the legality of a seizure or search, an appellate court will not reverse the [district] court's findings unless clearly erroneous or contrary to law." *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. A warrantless search or seizure is unreasonable unless it falls under a recognized exception. *State v. Stavish*, 868 N.W.2d 670, 675 (Minn. 2015). "The state bears the burden of establishing an exception to the warrant requirement." *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). "The ultimate test to be used in determining whether a suspect was under arrest is whether a reasonable person would have concluded, under the circumstances, that he was under arrest and not free to go." *State v. Beckman*, 354 N.W.2d 432, 436 (Minn. 1984).[3] "The appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain. This test does not depend on either the subjective motivation of the officer or the subjective perception of the suspect." *Torres v. Madrid*, 592 U.S. 306, 307 (2021) (citation omitted).

---

[2] We note that although the evidence at issue is Fohrenkam's incriminating statements, he challenges the statements as being the result of an unlawful seizure and not whether he received a proper *Miranda* warning before speaking to investigators.

[3] We note that there are circumstances in which a person's freedom of movement may be "restricted by a factor independent of police conduct." *Florida v. Bostick*, 501 U.S. 429, 436 (1991) (determining that this included "being a passenger on a bus"); *see also I.N.S. v. Delgado*, 466 U.S. 210, 218 (1984) (a person's freedom of movement was restricted while he was at his workplace). In those circumstances, "the 'free to leave' analysis . . . is inapplicable," and "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 436.

In Minnesota, the admissibility of a defendant's statement made during a custodial interrogation must be considered "in light of the policies served by the Fourth Amendment exclusionary rule." *State v. McDonald-Richards*, 840 N.W.2d 9, 16 (Minn. 2013) (quotation omitted). This is because "[o]ne of the purposes the exclusionary rule serves is to deter police violations of the Fourth Amendment." *Id.* When a police officer discovers evidence as the result of an unreasonable search or seizure, that evidence must be suppressed. *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012).

In a suppression proceeding, the state must prove by a preponderance of the evidence that the challenged evidence was lawfully obtained. *See State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013) (applying preponderance-of-the-evidence standard in Fourth Amendment warrantless-search case); *State ex rel. Rasmussen v. Tahash*, 141 N.W.2d 3, 13-14 (Minn. 1965) (explaining that state has obligation to show that circumstances under which evidence was obtained was consistent with constitutional requirements).

In denying Fohrenkam's motion to suppress statements made to investigators, the district court noted that "[t]here is no evidence in the record as to why [Fohrenkam] had not been released or whether this was an unusual length of time to be processed for release in Carlton County." This ruling by the district court, however, erroneously placed the burden of proof on Fohrenkam. The district court referenced this erroneous placement of the burden four times. First, the district court concluded that: "Although [Fohrenkam] was clearly in custody and had been formally arrested at the time of his interview, he was not unlawfully in custody as there is no evidence that the processing time to release him was

6

unreasonable." Second, that: "There is no evidence explaining the delay or indicating it was unreasonable, nor evidence to suggest that [Fohrenkam]'s release was purposefully delayed in the intervening time between the hearing and the police interview." Third, that "there is nothing to suggest that this is an unreasonable amount of time for a jail to process an order for conditional release." Finally, that: "Since the record is unclear as to why [Fohrenkam] was in custody . . . before release, or if he would have been released while talking with [investigators], it is possible [Fohrenkam] was in custody for a time exceeding his custodial status for the [unrelated] Carlton County case."

Here, the state waived an evidentiary hearing, choosing instead to submit two exhibits for the district court's consideration: (1) a copy of the Carlton County district court's release order, and (2) a video recording of the custodial interrogation. Based on our careful review of the record, the state's exhibits provide no information about the detention procedures at that jail as to the lawfulness of the continued detention. When the state provides no evidence to satisfy its burden to prove that evidence was obtained in compliance with the United States and Minnesota Constitutions, as is the case here, it fails to meet its burden by a preponderance of the evidence. *See Brooks*, 838 N.W.2d at 568; *Rasmussen*, 141 N.W.2d at 13-14. Therefore, the district court erred as a matter of law when it erroneously placed the burden with Fohrenkam to show that the evidence obtained by investigators violated his Fourth Amendment rights.[4]

---

[4] We note that the state argues on appeal that the burden of proof should be shifted to Fohrenkam because investigators had probable cause to arrest Fohrenkam prior to the custodial interrogation. We are not persuaded by the state's argument. At the suppression hearing, the state waived its right to call witnesses; notably one of the investigators present

7

We next consider de novo whether the district court's legal determination that "[Fohrenkam]'s detention and interrogation did not violate the Constitution" was based on the record surrounding the motion to suppress. *See Diede*, 795 N.W.2d at 849.

The district court concluded that "[t]o the extent [Fohrenkam]'s freedom was restrained beyond the restraint resulting from the Carlton County case, [Fohrenkam] made a knowing, intelligent and voluntary waiver of his rights before giving his statement [to investigators]." There is no dispute that Fohrenkam was in custody. The parties agree that Fohrenkam remained in custody after the Carlton County district court ordered his release, and the video recording of the custodial interrogation shows that when investigators entered the locked room in which Fohrenkam was being held, his hands were handcuffed in front of his body and he was wearing orange slippers and a shirt that had "CARLTON COUNTY JAIL" printed on the back. Investigators read Fohrenkam a *Miranda* warning and he knowingly waived his Fifth Amendment rights. Investigators proceeded to question Fohrenkam about his possible involvement in the murder of D.H.

---

at Fohrenkam's custodial interrogation who may have been able to provide testimony as to whether there existed probable cause to arrest Fohrenkam prior to the custodial interrogation. There is no such record from the suppression hearing and the state did not raise this issue at the suppression hearing. When a defendant appeals a district court's decision to deny a motion to suppress certain evidence, the record on appeal is limited to the record of the suppression hearing. *See State v. Pauli*, 979 N.W.2d 39, 50 n.9 (Minn. 2022) (noting that procedural rules must be applied by district courts at suppression hearings). Here, the proceeding challenged on appeal is a suppression hearing. *See* Minn. R. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceeding . . . shall constitute the record on appeal in all cases."). The record shows that no probable-cause evidence was presented at the suppression hearing nor submitted for the district court's consideration.

In *McDonald-Richards*, the supreme court determined that a *Miranda* warning alone is "not sufficient to purge the taint of a Fourth Amendment violation because the voluntariness of a statement under the Fifth Amendment does not remove the causal connection between the statement and a Fourth Amendment violation." 840 N.W.2d at 17. Because the state has failed to meet its burden of proof by a preponderance of the evidence to show that Fohrenkam was lawfully detained when he gave his statement to investigators, the subsequent *Miranda* warning given by investigators did not "purge the taint" of the Fourth Amendment violation. *Id.*

In its order denying Fohrenkam's suppression motion, the district court correctly noted: "There [was] no evidence in the record as to why [Fohrenkam] had not been released or whether this was an unusual length of time to be processed for release in Carlton County." However, as stated above, the record does not show that Fohrenkam's continued detention after his release was ordered was the result of an administrative delay associated with the jail's release procedure. Nor is an administrative delay "one of the well-delineated exceptions to the warrant requirement." *State v. Barrow*, 989 N.W.2d 682, 685 (Minn. 2023) (quotation omitted).[5] Here, we note that the district court had no record from which it could have made any determination about the status or nature of Fohrenkam's

---

[5] *See, e.g.*, *Ries v. State*, 920 N.W.2d 620, 628, 631 (Minn. 2018) (pat-frisk, community-caretaker, and exigent-circumstances exceptions); *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016) (automobile exception); *State v. Bernard*, 859 N.W.2d 762, 766 (Minn. 2015) (search incident to lawful arrest); *State v. Licari*, 659 N.W.2d 243, 250-54 (Minn. 2003) (actual-authority-to-consent, apparent-authority-to-consent, plain-view, and inevitable-discovery exceptions).

continued detention other than its approximate duration. Therefore, the district court erred as a matter of law when it denied the motion to suppress.

Having determined that Fohrenkam's statements were erroneously admitted, we consider next whether the error was harmless. *See McDonald-Richards*, 840 N.W.2d at 19. "Overwhelming evidence of guilt is also an important consideration," but such evidence cannot be the court's sole focus. *Id.* A witness-credibility determination by the finder of fact "may influence the outcome of the case." *Id.*

"When an error implicates a constitutional right, [the reviewing court] will award a new trial unless the error is harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (citation and quotation omitted). The burden is on the state to show that the constitutional error is harmless beyond a reasonable doubt, meeting this burden "by showing that the error did not contribute to the verdict." *State v. Conklin*, 444 N.W.2d 268, 275 (Minn. 1989).

When a district court erroneously admits a defendant's statement that resulted from a violation of the Fourth Amendment, the reviewing court must determine whether that error was harmless. *McDonald-Richards*, 840 N.W.2d at 19. When determining "whether a constitutional error regarding the admission of evidence is harmless, [appellate courts] consider the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defendant." *Id.* (quotation omitted). "Improperly admitted evidence is harmless, however, when the evidence is cumulative or there is other extensive evidence

connecting [the defendant] to the commission of the crime." *Id.* (alteration in original) (quotation omitted).

To determine whether the admission of Fohrenkam's statements in evidence was harmless beyond a reasonable doubt, we consider each of these factors.

### *Manner presented*

Here, the erroneously admitted evidence was a video recording of Fohrenkam's custodial interrogation that was played for the jury. The recording played for the jury lasted 19 minutes and the jury was provided a transcript of Fohrenkam's statements for reference while the recording was played. The jury also heard testimony from one of the investigators present during the interrogation.

### *Persuasiveness*

The erroneously admitted evidence was a significant part of the state's case. It was used to identify Fohrenkam as the shooter by placing him at the location of the shooting around the time of the shooting. It was also used to identify him as the shooter because it showed that he had a distinctive manner of speaking, consistent with the testimony of some witnesses. The state also used the erroneously admitted evidence for impeachment purposes. The state's impeachment theory was premised on Fohrenkam's conflicting statements pertaining to his whereabouts on February 9 and "lying about his phone being broken and his girlfriend knowing about it." The video recording was the state's only impeachment evidence and was therefore persuasive for this purpose. And the state's

11

identification theory focused on Fohrenkam's "speech pattern" during questioning being corroborated by witnesses' descriptions.

### *Closing argument*

In its closing argument, the state referenced Fohrenkam's statements four times, focusing on the erroneously admitted evidence to show Fohrenkam's lack of truthfulness, identification, and possible motive.

First, the prosecutor stated that "[Fohrenkam] was in the area before the shooting. He even admits that eventually. He lies a few times before he gets there, but eventually he says, 'Yeah, I was there that morning.'" Second, the prosecutor explained that the statements were one of the "puzzle pieces," that when combined with the surveillance footage and the eyewitnesses, would allow the jury to find Fohrenkam guilty without having the "where the gun is" puzzle piece. Third, the prosecutor suggested that Fohrenkam's "consciousness of guilt" explains his conflicting statements pertaining to his whereabouts. Stating that when someone knows that they "did something wrong . . . [that they] take certain actions to try to cover that up." And fourth, the prosecutor made a reference to Fohrenkam's statements when the video recording was played for the jury and they saw Fohrenkam's "demeanor," "method of speech," and "anger."

### *Counterargument*

Fohrenkam's counsel countered the erroneously admitted evidence throughout the proceedings, evidenced by objections, cross-examinations, and in closing argument.

In sum, Fohrenkam's statements to investigators were offered as impeachment and identification evidence. We conclude that the statements were persuasive-impeachment

12

evidence of Fohrenkam's credibility based on the conflicting statements made as to his whereabouts on the date D.H. was shot and killed. Therefore, we cannot say that "the guilty verdict was surely unattributable to the erroneous admission" of Fohrenkam's statements. *See id.* at 20. Thus, the district court's error in admitting the statements was not harmless beyond a reasonable doubt. We reverse the conviction and remand for a new trial consistent with this opinion.

On appeal, Fohrenkam also argues that the district court erred when it excluded his proffered expert pertaining to eyewitness identification, and that statements regarding his "speech pattern" constituted prosecutorial misconduct warranting a new trial. Because we are reversing and remanding this matter on the Fourth Amendment violation, we need not consider these arguments. We note, however, that the need for the eyewitness-identification expert's testimony was tied to specific statements that jurors made during voir dire that demonstrated their lack of understanding about the reliability of eyewitness identifications. When expert testimony would aid a jury's understanding and ability to evaluate the reliability of certain identifications, such testimony may be helpful. *See State v. Mosley*, 853 N.W.2d 789, 800 (Minn. 2014). We also note that the prosecutorial misconduct alleged here was the result of witness testimony relative to descriptions of Fohrenkam's speech pattern. While we do not give guidance on this matter, we remind prosecutors of their duty to prepare their witnesses prior to testifying to avoid inadmissible or prejudicial statements. *See State v. Carlson*, 264 N.W.2d 639, 641 (Minn. 1978); *State v. Richmond*, 214 N.W.2d 694, 695 (Minn. 1974) ("attach[ing] importance to whether . . .

prosecutor intentionally elicited such testimony" when determining whether to reverse based on witness testimony that prejudiced defendant's case).

**Reversed and remanded.**